## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **FLEX HOMES, INC.** *et al.*, | : | **Case No.: 07cv1005** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| | : | |
| **RITZ-CRAFT CORP OF** | : | <u>**OPINION AND ORDER**</u> |
| **MICHIGAN, INC.,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

Before the Court is a partial motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6)*,* (Doc. 6), filed by Defendants Ritz-Craft Corp of Michigan, Inc. and Ritz-

Craft Corp of Michigan, Inc. (collectively, "Ritz-Craft").  The Plaintiffs, Flex Homes, Inc. ("Flex

Homes"), and Kenneth and Ingrid Green (collectively, "the Greens")  have filed a brief in

opposition (Doc. 10), and Ritz-Craft has filed a brief in reply (Doc. 11).  Accordingly, this matter

is ripe for adjudication.  For the reasons articulated below, Ritz-Craft's partial motion to dismiss

is <u>**GRANTED in part**</u> and <u>**DENIED in part**</u>.

## I.  BACKGROUND

This is a dispute concerning the design, delivery, assembly and construction of pre-

fabricated houses.  In 2004, Flex Homes, an Ohio Corporation, contracted with Ritz-Craft, a

Michigan and Pennsylvania Corporation, to purchase the components of pre-fabricated houses

from Ritz-Craft for resale to consumers.  *See* Doc. 1-2 ("Builder Agreement" between Ritz-Craft

and Flex Homes, (the "Builder Agreement")).[1]  Flex Homes purchased the components of a pre-

fabricated house from Ritz-Craft under the Builder Agreement, and resold the house to the

---

[1] By the terms of the Contract, Flex Homes is defined as the "Builder" or "Dealer."  Doc. 1-2.

Greens before construction and assembly was complete.

On February 23, 2007, Flex Homes and the Greens filed suit in the Court of Common Pleas, Geauga County, Ohio alleging six counts related to the delivery, installation, and design of various components of the house the Greens ultimately purchased.  On April 5, 2007, the Defendants removed the case to this Court.  Ritz-Craft filed this partial motion to dismiss for failure to state a claim upon which relief can be granted on April 12, 2007.[2]

Flex Homes and the Greens (collectively, "the Plaintiffs") allege the following claims in the Complaint:

|  |  |
|---|---|
| Count I: | Breach of Contract, asserted by both Plaintiffs; |
| Count II: | Breach of Implied Warranty of Workmanship, asserted by both Plaintiffs; |
| Count III: | Breach of the Implied Warranties of Merchantability and Fitness, asserted by both Plaintiffs; |
| Count IV: | Negligence, asserted by both Plaintiffs; |
| Count V: | Products Liability, asserted by both Plaintiffs; |
| Count VI: | Ohio Consumer Sales Practices Act, asserted by the Greens only. |

With respect to the first five counts, the Plaintiffs request compensatory and punitive damages.[3]

As part of the breach of contract claim, Flex Homes asserts that, in addition to damages arising

---

[2]  Defendants Ritz-Craft Corp of PA, Inc. and Ritz-Craft Corp of Michigan, Inc. filed this motion. Defendant Citadel Builders, Inc. ("Citadel") consented to the removal of this matter, but has not yet been served with the Complaint.  Citadel is not a party to this motion to dismiss.

[3]  Flex Homes requests $1,000,000.00 in compensatory damages and the same amount in punitive damages in connection with Counts I-V.  The Greens request $175,000.00 in compensatory damages and the same amount in punitive damages in connection with Counts I-V, and $525,000.00 in connection with Count VI.  Both Plaintiffs seek attorney fees and costs.  Doc. 1-2 at 8-9.

from its sale to the Greens, it is entitled to damages for lost or canceled sales, though it does not

allege that any particular sale was cancelled or failed to come to fruition.

Ritz-Craft's motion to dismiss relates to some, but not all, of the Plaintiffs' claims.

Specifically, Ritz-Craft seeks dismissal of the following claims:  Count I, Breach of Contract, as

it relates to the Greens; Counts II and III, Breach of Implied Warranties, in their entirety; Count

IV, Negligence, as it relates to Flex Homes; and Count VI, Ohio Consumer Sales Practices Act,

to the extent alleged by Flex Homes.[4]

## II.    LAW AND ANALYSIS

### A.    Legal Standard

The Court may dismiss a claim for failure to state a claim upon which relief can be

granted under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  A motion to

dismiss under Rule 12(b)(6) is directed solely at the complaint itself.  *Roth Steel Products v.*

*Sharon Steel Corp*., 705 F.2d 134, 155 (6th  Cir. 1983) (citing *Sims v. Mercy Hospital of*

*Monore*, 451  F.2d 171, 173 (6th Cir. 1971)).  When evaluating a complaint in light of a motion

to dismiss, the Court must accept all of the plaintiff's allegations as true and resolve every doubt

in the plaintiff's favor.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990)

(citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A complaint must contain factual

allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1965 (2007).  A claim should be dismissed if it does not "contain

either direct or inferential allegations respecting all the material elements necessary to sustain

---

[4] Consequently, Ritz-Craft is clearly *not* seeking dismissal of the Breach of Contract claim as it relates to
Flex Homes, the Negligence claim as it relates to the Greens, the Product Liability claims, or the Ohio Consumer
Sales Practices Act claim as it relates to the Greens.

recovery under *some* viable legal theory . . . ."  *Id*. at 1969 (omitting citations and quotations, emphasis in original).

### B.    Discussion

Ritz-Craft's motion to dismiss challenges the viability of a number of the Plaintiffs' claims.  The Court will address each claim in turn.

#### 1.    Count One:  Breach of Contract

Count I of the Plaintiffs' Complaint alleges that Ritz-Craft breached its contract with Flex Homes, *i.e.*, the Builder Agreement.  Under the Builder Agreement, Flex Homes agreed to purchase pre-manufactured components of residential houses from Ritz-Craft, with the understanding that Flex Homes would sell the houses to consumers such as the Greens.  The Plaintiffs allege that the breach occurred when Ritz-Craft allegedly failed to properly deliver, design, assemble ("set"), and/or construct the first of the pre-manufactured homes governed by the Builder Agreement.  Doc. 1-2 ¶ 10.  Ritz-Craft does not dispute that Flex Homes can assert a viable claim for breach of contract; Ritz-Craft moves only to dismiss the Greens' breach of contract claim.  Ritz-Craft argues that the Greens cannot assert a breach of contract claim because they are not parties to the Builder Agreement.  In response, the Greens argue that, although they did not sign the Builder Agreement, they are third-party beneficiaries entitled to enforce its provisions.

##### i.    Governing Law

As a threshold issue, the Court must determine the law applicable to analyzing the viability of the Greens' breach of contract claim, and the other claims premised upon the Builder Agreement.  The Builder Agreement includes a "Governing Law" provision that states:

4

> This AGREEMENT shall be governed by, construed, and enforced in accordance
> with, the laws of Pennsylvania without regard to its principles of conflict of law.

Doc. 1-2 at 14 (Builder Agreement, § 9(c)).  Ritz-Craft argues that this provision is broadly

applicable to the Plaintiffs' claims, including the Greens' breach of contract claim and breach of

warranty claims.

The Plaintiffs concede that, based on § 9(c) of the Builder Agreement, Pennsylvania law

applies to the contract dispute between Flex Homes and Ritz-Craft, unless the Governing Law

provision is contrary to any fundamental policy of Ohio law.  In addition, they contest that the

"Governing Law" provision requires the Court to apply Pennsylvania law to any of the Plaintiffs'

other claims.

"A federal court sitting in diversity must apply the choice of law rules of the state in

which it sits." *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 (6th Cir. 2000) (citing *Klaxon Co. v.

Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Therefore, Ohio's choice of law rules apply at

the outset.  Choice of law provisions in contracts are generally enforceable under Ohio law.

*Schulke Radio Prods. Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St. 3d 436, 438-39 (Ohio

1983). The Ohio Supreme Court has adopted § 187(2) of the Restatement of Law Second on

Conflict of Laws.  *Id.*  Section 187(2) states as follows:

> The law of the state chosen by the parties to govern their contractual rights and
> duties will be applied, even if the particular issue is one which the parties could
> not have resolved by an explicit provision in their agreement directed to that issue,
> unless either (a) the chosen state has no substantial relationship to the parties or
> the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental
> policy of a state which has a materially greater interest than the chosen state in the
> determination of the particular issue and which, under the rule of § 188, would be
> the state of the applicable law in the absence of an effective choice of law by the
> parties.

5

In other words, Ohio law supports enforcing the Governing Law provision of the Builder Agreement unless Pennsylvania has no substantial relationship to the contract or the provision is contrary to Ohio public policy, Ohio has a materially greater interest in this dispute, and Ohio law would apply absent the choice of law provision in the Builder Agreement.

Ritz-Craft is a Pennsylvania corporation.  The Builder Agreement was prepared in Pennsylvania, and the factory that manufactures the goods governed by the contract is in Pennsylvania.  Therefore, Pennsylvania has a substantial relationship to the Builder Agreement.  The choice of law provision is not contrary to any Ohio policy either.  Although the Plaintiffs argue that the clause "without regard to [Pennsylvania's] principles of conflict of law" "def[ies] both law and logic," it is this clause that ensures that the state law the parties' mutually selected will apply.  Given Ohio's policy of enforcing choice of law provisions, the Governing Law provision of the Builder Agreement is not contrary to Ohio public policy.  Therefore, Pennsylvania law applies to disputes arising under the Builder Agreement.

### ii.    The Greens' Breach of Contract Claim

Whether the Greens' breach of contract claim is viable depends on their status as third-party beneficiaries under the Builder Agreement.  The first element of a breach of contract claim under Pennsylvania law is "the existence of a valid and binding contract to which [the plaintiff] and the defendants were parties." *Gundlach v. Reinstein*, 924 F. Supp. 684, 688 (E.D. Pa. 1996).  It is undisputed that the Greens are not parties to the Builder Agreement. *See* Doc. 6 at 5; Doc. 10 at 6. Nonetheless, the Greens may assert a breach of contract claim if they are third-party beneficiaries to the Builder Agreement. *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992).

Under Pennsylvania law, there are two methods of determining whether a non-party to a

contract is a third-party beneficiary.  First, in *Spires v. Hanover Fire Ins. Co.*, 70 A.2d 828, 830-31 (Pa. 1950), the Pennsylvania Supreme Court established the following test: both parties to the contract must express an intention to benefit the third-party, and this intent must be expressed in the contract itself.  *See Manor Junior College v. Kaller's Inc.*, 507 A.2d 1245, 1246 (Pa. Super. 1986) (discussing *Spires*).  Thus, *Spires* established that only an *intended* beneficiary who is expressly referenced in the contract itself qualifies as a third-party beneficiary entitled to assert a breach of contract claim.

Second, in *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983), the Pennsylvania Supreme Court recognized that, under certain circumstances, the  Restatement (Second) of Contracts § 302 (1979) is an appropriate alternative to the *Spires* definition of an intended third-party beneficiary. Section 302 of the Restatement states:

> § 302.  Intended and Incidental Beneficiaries
>
> (1) Unless otherwise agreed between the promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right of performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> >
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (2d) Contracts § 302.  As described in *Liederbach*, § 302 creates

> a two part test for determining whether one is an intended third party beneficiary: (1) the recognition of the beneficiary's right must be 'appropriate to effectuate the intention of the parties,' and (2) the performance must 'satisfy an obligation of the promisee to pay money to the beneficiary' or 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

7

*Liederbach*, 459 A.2d at 751.  The first part of the test is a standing requirement under which the trial court must determine whether intended third-party beneficiary status is appropriate to effectuate the parties' intentions.  *Id.*; s*ee also Clifton v. Suburban Cable TV Co., Inc.*, 642 A.2d 512, 514 (Pa. Super. Ct. 1994) (holding that third-party beneficiary status is an issue of law for the trial court to determine).  The second part of the Restatement approach addresses whether performance under the contract confers a benefit on the beneficiary.  Although the Restatement approach articulated in *Liederbach* retains the requirement that only an *intended* third-party beneficiary can assert contract rights, it relaxes the requirement that the beneficiary be *named* in the contract itself.

The Pennsylvania Supreme Court noted in *Liederbach*, however, that the less stringent Restatement approach applies in a *narrow* set of circumstances.  *Liederbach*, 459 A.2d at 751. For example, the facts in *Liederbach* justified the use of the Restatement approach.  Edward Kent retained attorney Harry Liederbach to prepare a will under which Frances Guy was to be the beneficiary of Mr. Kent's estate.  Unfortunately for Ms. Guy, Mr. Liederbach had her witness the will.  Thus, when Mr. Kent died, the probate court invalidated her testamentary gift because she had witnessed the will.  Ms. Guy brought a legal malpractice action against Mr. Liederbach under the theory that, as a beneficiary under the will, she was a third-party beneficiary to the contract between Mr. Kent (the testator) and Mr. Liederbach (his lawyer) to *prepare* the will.  The Pennsylvania Supreme Court acknowledged that Ms. Guy was not an intended third-party beneficiary under the *Spires* definition because the contract to prepare the will did not mention her by name.  The Court reasoned, however, that because the parties to the contract to prepare the will obviously intended to confer a benefit on Ms. Guy via performance of the contract, she fell

8

within the concept of an intended third-party beneficiary.  The Restatement approach

encompasses this understanding because, under part one of the test (the standing requirement),

recognition of Ms. Guy's right to performance of the contract is appropriate to effectuate the

intent of both Mr. Kent and Mr. Liederbach in their contract to prepare the will.  The second part

of the Restatement test is also satisfied because the circumstances (the preparation of the will and

its content) indicate that the promisee (the testator) intends to give the benefit of the promisor's

(lawyer's) performance to the beneficiary, Ms. Guy.  *Id*. at 751-52.

      Pennsylvania courts interpret *Liederbach* as creating a narrow class of cases to which the

Restatement approach is applicable, and, as stated in *Liederbach* itself, only overruling *Spires* "to

the extent that it states the *exclusive* test for third-party beneficiaries."  *Manor Junior College*,

507 A.2d at 1247-48 (quoting *Liederbach*, 459 A.2d at 751 (emphasis added)).  In fact, review of

opinions regarding third-party beneficiaries from the Pennsylvania Supreme Court, and the

state's lower courts, reveals that Pennsylvania courts make exceptions to the *Spires* standard in a

limited range of situations, and do not confer third-party beneficiary status casually.  *See, e.g.*,

*Chen v. Chen*, 893 A.2d 87 (Pa. 2006) (holding that Daughter was not intended third-party

beneficiary to divorce settlement agreement between parents including child support payments);

*Burks v. Federal Ins. Co.*, 883 A.2d 1086, 1091-92 (Pa. Super. 2005) (holding customers of

restaurant not intended third-party beneficiaries of contract between proprietor and insurance

company – despite receiving a benefit, "the benefit of the contract is not meant to primarily

protect these individual's interests"); *Drummond v. University of Pennsylvania*, 651 A.2d 572,

578-79 (Pa. Super. 1994) (holding members of public not intended third-party beneficiary to

government construction contract unless specifically named); *Dressel Assoc., Inc. v. John A.*

*Welch Real Estate Appraisers, Inc.*, 632 A.2d 906, 908 (Pa. Super. Ct. 1993) (stating that, under the Restatement approach, "facts must be so compelling that recognition of the beneficiaries rights is appropriate to effectuate the intention of the parties" and denying third-party beneficiary status); *Deeter v. Dull Corp., Inc.*, 617 A.2d 336, 343 (Pa. Super. 1992) (holding worker not intended third-party beneficiary of lease agreement requiring lessee to carry workers compensation insurance for workers); *Meyers Plumbing & Heating Supply Co. v. West End Federal Sav. & Loan Ass'n*, 498 A.2d 966, 969 (Pa. Super. 1985) (holding subcontractor not intended third-party beneficiary of contract between property owner and contractor); *Bruce v. Fountains at Logan Square*, 82 Pa. D. & C. 4th 328, 333-34 (Pa. Com. Pl. 2006) (holding property owner not intended beneficiary of contract between contractor and subcontractor). *Cf. Scarpitti*, 609 A.2d at 150 (holding homeowner intended third-party beneficiary of contract between housing development and architect to approve and maintain development's restrictive covenants regarding aesthetics).[5]

Here, the Greens cannot satisfy the *Spires* test because they do not even allege that the Builder Agreement specifically mentions them. Therefore, they must satisfy the Restatement

---

[5]  *Chen*, a recent Pennsylvania Supreme Court decision, demonstrates that Pennsylvania defines "intended third-party beneficiary" quite narrowly, even after *Liederbach*. *Chen*, 893 A.2d 87. The contract at issue in *Chen* was a divorce settlement agreement, including child support payments from husband to wife. Daughter sought to intervene in her mother's lawsuit under the contract seeking to collect the child support payments under an intended third-party beneficiary theory. The Pennsylvania Supreme Court discussed both *Spires* and *Liederbach* in detail. First, interpreting *Spires* very narrowly, the Court noted that Daughter could not satisfy *Spires* because, although the child support provision of the divorce agreement expressly mentioned a daughter, it did not mention her by name, and payment was to be directed toward her mother. Therefore, the contract itself did not express an intention to benefit Daughter. *Chen*, 893 A.2d at 92. Turning to *Liederbach*, the Court held that Daughter had not satisfied the standing requirement because recognizing her right to enforce the divorce settlement agreement as a third-party beneficiary was not appropriate to effectuate the intentions of the parties to the contract. The majority resolved that policy considerations dictate interpreting the intent of the contract as an agreement between parents to support their child, not an agreement to provide money to the child. *Id*. at 96. In concurrence, two justices concluded that policy considerations were not necessary to reach the same result because the child support provision stated that Husband will pay Wife to support their Daughter, thus indicating that Daughter is only an incidental beneficiary. *Id.* at 97.

10

approach by arguing facts "so compelling that recognition of [their] rights is appropriate to effectuate the intention of [Ritz-Craft and Flex Homes]." *Dressel*, 632 A.2d at 908.  The Builder Agreement does not express an intention to benefit the Greens.  Instead, it describes a "business relationship whereby the Builder purchases Ritz-Craft products for resale to various customers of the builder, subject to the terms and conditions of this AGREEMENT."  Doc. 1-2 at 1.  Unlike the contract in *Liederbach*, *Scarpetti*, or even *Chen*,[6] performance under the Builder Agreement does not inherently benefit anyone other than Ritz-Craft and Flex Homes, and there is no provision for consideration by any third-party in order for the Builder Agreement to be operable. Certainly, both parties contemplate sales from Flex Homes to third-parties and both parties assume that such sales are a necessary predicate to the continued profitability of the Builder Agreement.  The Builder Agreement does not depend on such sales, however.  Simply put, the Greens must buy their home from Flex Homes *after* Flex Homes has purchased the components therefor from Ritz-Craft.  Any relationship the Greens have to Ritz-Craft is through their home purchase from Flex Homes, not through the Builder Agreement between Ritz-Craft and Flex Homes.  Affording the Greens intentional third-party beneficiary status in these circumstances would expand recognition of intentional third-party beneficiary status outside the boundaries established by Pennsylvania courts.  Under the first prong of the *Liederbach* test, the Greens do not have standing to assert a breach of contract claim.

---

[6] In *Liederbach*, the central purpose of the contract between the testator and lawyer was to establish a will conferring a benefit on the beneficiary.  In *Scarpetti*, the architect affirmatively protected the homeowner's restrictive covenants simply by performing his contractual duties.  And, even though the Pennsylvania Supreme Court refused to treat the daughter in *Chen* as an intentional third-party beneficiary, the child support provision of the divorce settlement agreement specifically earmarked monthly payments for her support.  In each of these contracts, performance automatically benefits specifically identifiable individuals; these are not simple commercial transactions.

11

The Plaintiffs argue that they must be third-party beneficiaries because they appear to be entitled to an express manufacturer's warranty.  The Plaintiffs attach the "One-Year Limited Warranty" portion of the "Builder Policy and Procedure Manual" to their response to Ritz-Craft's motion to dismiss.[7]  The "One-Year Limited Warranty" appears to be the "Limited Warranty" referenced in the first sentence of the "Limited Warranty and Remedies" provision of the Builder Agreement and listed as an attachment to the Builder Agreement under § 11(j).  The Plaintiffs argue that they are intended third-party beneficiaries because the "One-Year Limited Warranty" includes references to "you, the homeowner," and describes the express warranty rights Ritz-Craft affords to the ultimate purchaser.  On its face, however, the "One-Year Limited Warranty" is not a description of rights that Ritz-Craft conferred on the Greens under the Builder Agreement.  It is, instead, a description of the manufacturer's express warranty that accompanies the product Flex Homes sold to the Greens.  Thus, Ritz-Craft sold a product to Flex Homes which included certain warranty rights and Flex Homes obtained the right under the Builder Agreement to pass on those warranty rights with the goods it resold.  Although the Greens appear to have some warranty rights against Ritz-Craft by virtue of their purchase from Flex Homes, the fact of that warranty is not sufficient to confer the full benefits of third-party beneficiary status to them, particularly in light of the principles of Pennsylvania third-party beneficiary law discussed above.

---

[7]  In attaching a portion of the "Builder Policy and Procedures Manual" to their response, the Plaintiffs note that, for purposes of Rule 12(b)(6), the Court may consider a document that was not formally attached to the Complaint when the document is either referenced in the Complaint or its attachments and is central to the Plaintiff's claim.  *See* Doc. 10 at 6 (citing *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).  The "One-Year Limited Warranty," ostensibly the express warranty Ritz-Craft provides ultimate purchasers of its products, is referenced in the Builder Agreement attached to the Complaint, and is central to the Greens' third-party beneficiary argument.  Therefore, the Court will consider it in resolving this motion to dismiss.

Consequently, the Greens are not intended third-party beneficiaries to the Builder Agreement and their breach of contract claim is accordingly **DISMISSED**.

### 2. Counts Two and Three: Breach of Implied Warranties of Workmanship, Merchantability and Fitness for a Particular Purpose

Having concluded that the Greens are not third-party beneficiaries to the Builder Agreement, the Court must analyze Flex Homes' and the Greens' implied warranty claims separately.

#### i. Flex Homes' Implied Warranty Claims

The Builder Agreement governs the relationship between Flex Homes and Ritz-Craft. The Builder Agreement includes the following limitation of warranties provision:

> 10.  Limited Warranty and Remedies
>
> RITZ-CRAFT'S WARRANTY TO THE BUILDER IS AS REFLECTED IN THE LIMITED WARRANTY ATTACHMENT TO THIS AGREEMENT.  THAT WARRANTY IS THE SOLE AND EXCLUSIVE REMEDY.  THERE ARE NO OTHER WARRANTIES, EXPRESS OR IMPLIED, AND THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY DISCLAIMED AND EXCLUDED FROM THIS AGREEMENT.  ANY AND ALL WARRANTIES MADE BY RITZ-CRAFT IN CONNECTION WITH ITS PRODUCTS ARE TERMINATED IMMEDIATELY IN THE EVENT THAT ANY OF ITS PRODUCTS ARE ALTERED OR MODIFIED WITHOUT THE EXPRESS WRITTEN CONSENT OF RITZ-CRAFT. . . .

Doc. 1-2.

Under Pennsylvania's version of the Uniform Commercial Code, implied warranties generally may be disclaimed by "language which in common understanding calls the attention of the buyer to the exclusion of warranties . . . ."  13 Pa. C.S.A. § 2316(c).  The above language – in particular, the phrase "THERE ARE NO OTHER WARRANTIES, EXPRESS OR IMPLIED" –

13

clearly disclaims all implied warranties.  This ostensibly includes, and Flex Homes does not argue that it does *not* include, the implied warranty of workmanship.  Accordingly, Flex Homes' breach of the implied warranty of workmanship is **DISMISSED**.[8]

Similarly, 13 Pa. C.S.A. § 2316(b) permits exclusion of the implied warranties of merchantability and fitness.  Section 2316(b) permits exclusion of the implied warranties of merchantability and fitness if the exclusion mentions merchantability and is in a "conspicuous" writing.  Disclaimer language is "conspicuous" under Pennsylvania law when "a reasonable person against whom it is to operate ought to have noticed it" or when "it is in larger or other contrasting type or color."  13 Pa. C.S.A. § 1201.  Here, the above quoted language is conspicuous: it appears on the last page of the contract, under a separate heading, and in all capital letters (in contrast to the rest of the agreement).  Furthermore, implied warranties of merchantability, and fitness, are specifically listed as excluded.  This exclusion appears, moreover, in a commercial contract between sophisticated parties who presumably understand the import of such disclaimer language.  Therefore, Flex Homes cannot assert a breach of an implied warranty of any kind.  *See Hammermill Paper Co. v. C.T. Main Const. Inc.*, 662 F. Supp. 816, 818 (W.D. Pa. 1987).  Accordingly, Flex Homes' claims for breach of the implied warranties of merchantability and fitness are **DISMISSED**.

---

[8]  The parties agree that the UCC, as adopted by Pennsylvania, applies to Flex Homes' implied warranty claims.  In response to the motion to dismiss, Flex Homes simply argues that the limitation of warranty language in the Builder Agreement is not "conspicuous."  Flex Homes does not argue that the implied warranty of workmanship is distinguishable from the implied warranties of merchantability and fitness such that the limitation of warranties provision might be inapplicable to that claim.  Nor does either party argue that the contract at issue is, for any reason, not governed by the UCC.  Thus, the Court applies well-established Pennsylvania UCC principles to this aspect of the parties' debate.

ii.    **The Greens' Implied Warranties of Merchantability and Fitness Claims**

As discussed above, the Greens are not parties to, or third-party beneficiaries of, the Builder Agreement.  Therefore, the choice of law clause in the Builder Agreement does not apply to the Greens breach of implied warranty claims and Ohio law governs.  Under Ohio law, a consumer cannot sue a remote manufacturer for breach of an implied warranty of merchantability (O.R.C. § 1302.27) or fitness for a particular purpose (O.R.C. § 1302.28).  *See Curl v. Volkswagon of America, Inc.*, 114 Ohio St. 3d 266, 271-73 (Ohio 2007).  "In Ohio, damages are recoverable for breach of implied warranties only if there is privity of contract between the parties."  *Id*. at 271 (omitting internal quotations and citations); *see also Johnson v. Monsanto*, No. 11-02-02, 2002 WL 2030889, at *2 (Ohio Ct. App. Sept. 6 2002).  "[A]bsent a contractual relationship between the plaintiff and defendant, an action based on contract for breach of warranty does not exist." *Lawyers Cooperative Publishing Co. v. Muething*, 65 Ohio St. 3d 273, 276 (Ohio 1992). Therefore, the Greens' breach of the implied warranties of merchantability and fitness fail as a matter of law and are **__DISMISSED__**.

iii.    **The Greens' Implied Warranty of Workmanship Claim**

A home builder generally has a duty to construct a residence in a workmanlike manner, using ordinary care.  *See Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St. 2d 361, 378-79 (Ohio 1982); *Saltis v. Lakes Heating & Air Conditioning, Inc.*, 2001 WL 276346, at *3 (Ohio Ct. App. Mar. 21 2001) (citing *Velotta*).  Because the action essentially alleges that the builder breached a duty of ordinary care to the homeowner, an implied warranty of workmanship in this context is a tort claim, not a contract claim.  *Id.*; *see also LaPuma v. Collinwood Concrete*, 75

15

Ohio St. 3d 64, 67 (1996).  Under Ohio law, implied warranties sounding in tort and seeking only economic damages are not subject to the privity requirement that foils the Greens' other implied warranty claims.  *See Chemtrol Adhesives, Inc. v. American Manufacturers Mut. Ins. Co.*, 42 Ohio St. 3d 40, 49 (Ohio 1989) (citing *Iacono v. Anderson Concrete Co.*, 42 Ohio St. 2d 88, 93 (1975)).

In *Velotta*, and subsequent cases interpreting it, Ohio courts have examined the distinctions between an implied warranty of workmanship claim in the context of (1) the sale of a house built by the builder, then sold to the consumer; (2) a similar sale of a partially completed house; and (3) an agreement to build a house for a consumer in the future.  *See*, *Velotta*, 69 Ohio St. 2d at 79; *Barton v. Ellis*, 34 Ohio App. 3d 251, 252-53 (Ohio Ct. App. 1986); *Kirk v. Jim Walter Homes, Inc.*, 41 Ohio App. 3d 128, 129-130 (Ohio Ct. App. 3d 1987).  *Velotta* held that an implied warranty claim arising out of the first scenario sounds in tort, but left the other two scenarios open for resolution by subsequent courts.  *Velotta*, 69 Ohio St. 2d at 379 n.2.  Since then, Ohio courts have held that, when a builder sells a partially completed residence, just as when it sells a completed one, an implied warranty of workmanship claim arises in tort.  *See*, *e.g.*, *Kirk*, 41 Ohio App. 3d at 130.

Construing the facts in the light most favorable to the Greens, their implied warranty of workmanship survives.  They have alleged that they bought the house when it was partially constructed.  Doc. 1-2 ¶ 8.  They have also alleged that Ritz-Craft sub-contractors were required to do the installation work and that Ritz-Craft was required to "set" the pre-manufactured home on its foundation, but either failed to do so or failed to use ordinary care in connection with doing so.  With respect to this claim, they are alleging purely economic damages.  Therefore, their

16

claim sounds in tort and is not subject to the vertical privity requirement.  Accordingly, the

Greens have plead facts sufficient to state a claim that Ritz-Craft breached a duty to perform the

work on the purchased home in a workmanlike manner.

### 4.      Count Four: Negligence

Ritz-Craft argues that Flex Homes' negligence claim is barred by the economic loss

doctrine.  Flex Homes does not defend *its* negligence claim, but notes that Ritz-Craft is not

challenging *the Greens'* negligence claim.  Thus, Flex Homes is apparently abandoning its

negligence claim.  Because this point is somewhat unclear from the briefing, however, the Court

will briefly analyze Ritz-Craft's argument that the economic loss doctrine prevents Flex Homes

from asserting a negligence claim.

When a contract governs the relationship between two parties to a dispute involving

purely economic losses, the economic loss doctrine limits recovery to actions based on the

contract.  *See New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919,

925-26 (Pa. Super. 1989).  In describing the rationale for the economic loss doctrine, the United

States Supreme Court has:

> expressed its concern for maintaining the separate spheres of the law of contract
> and tort. It emphasized that where an allegedly defective product causes damage
> only to itself, and other consequential damages resulting from the loss of the use
> of the product, the law of contract is the proper arena for redressing the harm
> because in such a case, the damages alleged relate specifically to product quality
> and value as to which the parties have had the opportunity to negotiate and
> contract in advance. They have allocated the risks of possible types of losses, and
> agreed on the level of quality that will be given for the price demanded. When the
> product fails to conform and only economic losses result, the parties' recovery one
> against the other for economic losses should be limited to an action on that
> contract and no additional recovery in negligence or strict liability is permitted.

*Id*. at 550-51 (paraphrasing *East River S.S. Corp. v. Transamerica Delval, Inc.*, 476 U.S. 858

17

(1986).  In determining whether the economic loss doctrine applies, Pennsylvania has adopted the "gist of the action" test.  *See Sullivan v. Chartwell Inv. Partners*, 873 A.2d 710, 719 (Pa. Super. 2005).  "Generally, the gist-of-the action doctrine precludes a party from raising tort claims where the essence of the claim actually lies in the contract that governs the parties relationship."  *Id*.

Flex Homes alleges purely economic damages resulting from Ritz-Craft's alleged failure to perform under the Builder Agreement.  Moreover, because the allegations in the Complaint relate specifically to Ritz-Craft's alleged failure to perform certain duties under the Builder Agreement, the gist of the action is contractual.  Therefore, the economic loss doctrine applies; Flex Homes is limited to contract remedies and Flex Homes' negligence claim is **<u>DISMISSED</u>**.

### 5.    Count Six: Ohio Consumer Sales Practices Act

Ritz-Craft is not seeking dismissal of the Greens' claim under the Ohio Consumer Sales Practices Act ("CSPA").  Although Flex Homes does not appear to assert a claim under the CSPA, in an abundance of caution, Ritz-Craft moved for dismissal of any such claim by Flex Homes.  In its response, Flex Homes confirmed that it is not asserting a claim under the CSPA. Therefore, the Court need not address this issue, except to clarify that the Complaint only asserts a CSPA claim on behalf of the Greens.

### 6.    Lost or Cancelled Sales

In the Complaint, Flex Homes asserts the following claim:

As a direct and proximate result of the Defendants' conduct, Flex was unable to . . . . purchase and resell Ritz-Craft products to its customers, was forced to cancel or alter existing contracts with its customers and suffered damages in the sum of $1,000,000.00.

18

Doc. 1-2 ¶ 12.  Ritz-Craft contends that the Builder Agreement precludes Flex Homes from

recovering damages for lost or cancelled sales based on the following limitation of liability

clause in the contract:

> DEALER REMEDIES ARE LIMITED.  DEALER MAY NOT RECOVER ANY
> LOSS OF PROFITS, INDIRECT, SPECIAL, CONSEQUENTIAL, OR
> INCIDENTAL DAMAGES ARISING OUT OF ANY BREACH OF
> WARRANTY OR CONTRACT.  SUCH DAMAGES ARE EXCLUDED FROM
> THIS CONTRACT.  RITZ-CRAFT'S MAXIMUM RESPONSIBILITY IN
> DAMAGES FOR ANY SALE IS LIMITED TO THE PRICE CHARGED FOR
> THAT SALE.

Doc. 1-2.

Under Pennsylvania law, limitation of liability provisions in commercial contracts are

generally enforceable.  *See* 13 Pa. C.S.A. 2715; *Carll v. Terminix Int'l L.P.*, 793 A.2d 921, 924

(Pa. Super. 2002) ("[U]nder Pennsylvania law in a commercial setting a contractual provision

limiting warranties, establishing repair or replacement as the exclusive remedy and excluding

liability for special, indirect and consequential damages is generally valid and enforceable.");

*Mitsubishi Corp. v. Goldmark Plastic Compounds, Inc.*, 446 F. Supp. 2d 378, 385 (W.D. Pa.

2006).  "As a general matter an exclusive remedy provision will be enforceable if three

conditions are satisfied: (1) the parties agreed that the remedy is exclusive; (2) the remedy did not

fail of its essential purpose; and (3) the limitation was not unconscionable.  *Mitsubishi*, 446 F.

Supp. 2d at 385 (citing *Jim Dan, Inc. v. O.M. Scott & Sons Co.*, 785 F. Supp. 1196, 1198 (W.D.

Pa. 1992).

Determining whether the first condition is satisfied is a matter of contract interpretation.

Flex Homes argues that the Builder Agreement was drafted by Ritz-Craft and that it should

therefore be construed against Ritz-Craft.  In response, Ritz-Craft points out that the rule of

19

contract interpretation Flex Homes is invoking – *contra proferentem* – only applies when the terms of the contract are ambiguous. *See Banks Eng'g Co. Inc. v. X*, 697 A.2d 1020, 1023 (Pa. Super. 1997) ("As a general rule, agreements will be construed against the drafter only when the terms are ambiguous."). Because Flex Homes has not argued ambiguity – and because the limitation of liability clause of the Builder Agreement is unambiguous – the Court will look to the plain language of the contract and will not construe it against Ritz-Craft. *Id.*

The Builder Agreement expressly states that loss of profits, indirect, special, consequential, and incidental damages are not recoverable. Flex Homes admits that it voluntarily entered into the Builder Agreement with Ritz-Craft. Therefore, the first condition for enforcing the limitation of liability provision is satisfied.

Second, the purpose of a limitation of liability provision in a commercial contract is generally to promote economic predictability by specifically defining the economic risks associated with the agreement for each party. *See Mitsubishi*, 446 F. Supp. 2d at 386. "In such cases, a limited remedy operates exactly as intended and does not fail of its essential purpose." *Id.* (quoting *Jim Dan, Inc.*, 785 F.Supp. at 1199.) The Builder Agreement is a commercial contract between Ritz-Craft and Flex Homes. There is no indication that the parties' decision to limit their liability was anything other than an economic risk calculation. Therefore, the second condition for enforcing the limitation of liability provision is satisfied.

The third condition is also satisfied because the limitation of liability provision is not unconscionable. In analyzing unconscionability, courts should evaluate whether there is a disparity in the bargaining power or sophistication of the parties. *See Carll*, 793 A.2d at 924. Although limitation of liability clauses in contracts between *consumers* and businesses raise

20

unconscionability concerns, *see LoBianco v. Property Protection, Inc.*, 437 A.2d 417, 419 (Pa. Super. Ct. 1981), both Ritz-Craft and Flex Homes are commercial entities.  Furthermore, there is no indication of a disparity in bargaining power or sophistication.  Therefore, even if Ritz-Craft drafted the Builder Agreement, Flex Homes willingly accepted its terms. The limitation of liability provision is *not* unconscionable, and *is* enforceable.

Accordingly, Flex Homes' claims for lost or cancelled sales are **DISMISSED**.  As stated in the Builder Agreement, Flex Homes is limited to recovering the price of the sale, *i.e.*, the amount it paid Ritz-Craft in connection with the prefabricated house that the Greens ultimately purchased.

### 7.      Punitive Damages

In the prayer for relief at the end of the Complaint, Flex Homes requests $1,000,000.00 in punitive damages, and the Greens request $175,000.00 in punitive damages.  All of the Plaintiffs assert their claim for punitive damages in connection with Counts I-V (*i.e.*, all claims except the Greens' claim under the CSPA).  Ritz-Craft seeks dismissal of all claims for punitive damages, arguing that the Plaintiffs have failed to allege malice, recklessness, or evil motive.  In response, the Plaintiffs do not argue that they sufficiently alleged the requisite state of mind for awarding punitive damages.  Instead, they argue that Pennsylvania law does not require the plaintiff to allege facts sufficient to state a claim for punitive damages, but only requires the plaintiff to request punitive damages in the prayer for relief.

The Plaintiffs are correct in stating that a request for punitive damages is not an independent grounds for relief.  *See Nix v. Temple University*, 596 A.2d 1132, 1138 (Pa. 1991) (citing *Feingold v. Se. Pennsylvania Transp. Auth.*, 517 A.2d 1270, 1276 (Pa. 1986).  Their

21

argument, however, misses the mark.  It is well-settled under Pennsylvania law that punitive damages are not available for breach of contract.  *See*, *e.g.*, *D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981).  Likewise, even if the Plaintiffs' implied breach of the warranties of merchantability and fitness claims had survived this motion to dismiss, punitive damages are not available for breach of warranty under Pennsylvania law either.  *See*, *e.g.*, *Citizens Bank of Pennsylvania v. Chevy Chase Bank*, 2004 WL 875479, at *3 (E.D. Pa. 2004). Therefore, as a matter of law, the Plaintiffs cannot seek punitive damages based on their contract claims.

The Plaintiffs' remaining claims for which they request punitive damages – the Greens' implied breach of the warranty of workmanship, negligence and products liability – are non-contractual, and are therefore governed by Ohio law.  Under Ohio law, the plaintiff must allege in the complaint facts sufficient to raise an inference of actual malice[9] in order present a claim for punitive damages.  *See Lum v. Mercedes Benz USA, L.L.C.*, No. 3:05cv7191, 2006 WL 1174228, *2 (N.D. Ohio Apr. 18 2006).  When the plaintiff includes a request for punitive damages in the complaint, but fails to allege sufficient facts to support an inference of actual malice, the plaintiff must, at a minimum, amend the complaint to add sufficient facts.  *Id*.  This assumes, of course, that such an amendment can be made in good faith.

Here, the Plaintiffs' have not alleged facts sufficient to support an inference of actual

---

[9]  In Ohio, "actual malice" for purposes of punitive damages awards is defined as: "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  *Preston v. Murty*, 32 Ohio St. 3d 334 (Ohio 1987) (syllabus); *Magical Farms, Inc. v. Land O'Lakes, Inc.*, No. 1:03cv2054, 2006 WL 1134204, *1 (N.D. Ohio Apr. 21 2006).  In the context of products liability claims, punitive damages are permitted by statute if there is evidence of "flagrant disregard" for the safety of persons who might be harmed by the product.  O.R.C. § 2307.80(A).

malice.  In fact, the Complaint does not contain any allegations regarding Ritz-Craft's mental state, with the exception of references to "deception" and "misrepresentation" in connection with the CSPA claim (for which the Greens are *not* seeking, and can not seek, punitive damages).  Accordingly, in order to state viable claims for punitive damages under their negligence and products liability causes of action, the Plaintiffs must **AMEND** their complaint to include facts sufficient to support an inference of actual malice, if such facts appropriately can be alleged.

### III.    **CONCLUSION**

*Defendants Ritz-Craft Corp of PA, Inc. and Ritz-Craft Corp of Michigan, Inc's Motion To Dismiss* (Doc. 6) is **GRANTED in part and DENIED in part**.  The motion is **GRANTED** with respect to the following claims, all of which are hereby **DISMISSED**:

Count I, Breach of Contract, with respect to Plaintiffs Kenneth and Ingrid Green;

Count II, Breach of Implied Warranty of Workmanship, with respect to Plaintiff Flex Homes, Inc.;

Count III, Breach of Implied Warranties of Merchantability and Fitness, with respect to all Plaintiffs;

Count IV, Negligence, with respect to Plaintiff Flex Homes, Inc.;

Count VI, Ohio Consumer Sales Practices Act, to the extent alleged by Flex Homes, Inc.

Additionally, Plaintiff Flex Homes, Inc.'s claims for damages in the amount of future lost or cancelled sales, and the Plaintiffs' claims for punitive damages in connection with their contract claims are **DISMISSED**.  Furthermore, the Court finds that the Complaint does not allege facts sufficient to support a request for punitive damages with respect to any remaining claims, and **ORDERS** that such damages will be barred unless the Plaintiffs **AMEND** the Complaint within 10 days of the date of this Order to allege facts sufficient to support an award of punitive

23

damages.


**IT IS SO ORDERED.**


<u>**s/Kathleen M. O'Malley**</u>
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: March 18, 2008**

24