### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **FLEX HOMES, INC.** *et al.*, | : | **Case No.: 07cv1005** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| | : | |
| **RITZ-CRAFT CORP OF** | : | **OPINION AND ORDER** |
| **MICHIGAN, INC.,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

Before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),
(Doc. 86), filed by Defendant Citadel Builders, Inc. ("Citadel").  The Plaintiffs, Flex Homes, Inc.
("Flex Homes"), and Kenneth and Ingrid Green (collectively, "the Greens") have filed a brief in
opposition (Doc. 93), and Citadel has filed a brief in reply (Doc. 95).  Accordingly, this matter is
ripe for adjudication.  For the reasons articulated below, Citadel's motion to dismiss is **GRANTED
in part** and **DENIED in part**.

## I.      BACKGROUND

This is a dispute concerning the design, delivery, assembly and construction of pre-fabricated
houses.  The Court has set forth the facts and allegations giving rise to this lawsuit in detail in two
previous orders.  (Docs. 22 and 59.[1])  Accordingly, the Court will only summarize the key facts as
they relate to the claims and defenses relevant to Citadel's pending motion to dismiss.

---

[1] Document No. 22 is also available at *Flex Homes, Inc. v. Ritz-Craft Corp of Michigan,
Inc.*, Case No. 07cv1005, 2008 WL 746669 (N.D. Ohio Mar. 18, 2008).  Similarly, Document
No. 59 is also available at *Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*, Case No.
07cv1005, 2009 WL 3242140 (N.D. Ohio Sept. 30, 2009).  This Opinion & Order will simply
refer to these two previous Opinion & Orders as the "March 18 Opinion & Order" or "Doc. 22,"
and the "September 30 Opinion & Order" or "Doc. 59," respectively.

### A.    THE PARTIES AND THE MODEL HOME

Plaintiff Flex Homes is a builder.  It is a family business owned by non-party Inga Dollinger, who is Plaintiff Ingrid Green's mother.  In 2004, Ingrid Green was the Sales Manager, General Contractor, and Vice President of Flex Homes.  Plaintiff Kenneth Green is Ingrid Green's husband.

In 2004, Flex Homes, an Ohio Corporation, contracted with Ritz-Craft, a Michigan and Pennsylvania Corporation, to purchase the components of pre-fabricated houses from Ritz-Craft for resale to consumers.  *See* Doc. 1-1 ("Builder Agreement" between Ritz-Craft and Flex Homes, (the "Builder Agreement")).  Flex Homes purchased the components of a pre-fabricated house from Ritz-Craft under the Builder Agreement, and resold the house to the Greens before construction and assembly was complete (hereinafter, the "Model Home").

In February 2005, Ritz-Craft delivered the components of the Model Home to Flex Homes' construction site at 18715 Auburn Glen Drive in Chagrin Falls, Ohio.  Pursuant to an October 27, 2004 contract between Ritz-Craft and Citadel known as a "Set Crew Agreement," Citadel assembled the components of the Model Home on-site.  (Set Crew Agreement, Doc. 86-6.)  In addition, the Greens (as opposed to Ritz-Craft or Flex Homes) contracted with various sub-contractors, who completed the installation and finished the interior and exterior of the Model Home, including the electrical work, HVAC, and plumbing.

### B.    PROCEDURAL HISTORY

 The Greens immediately complained of various defects in the design, construction, and installation of the Model Home.  As a result, on February 23, 2007, Flex Homes and the Greens filed suit in the Court of Common Pleas, Geauga County, Ohio alleging six counts related to the delivery,

2

installation, and design of various components of the Model Home.[2]  On April 5, 2007, the

Defendants removed the case to this Court.  Since removal, the parties have engaged in significant

motion practice.

### 1.      Ritz-Craft's Motion to Dismiss

First, Defendant Ritz-Craft filed a partial motion to dismiss most of the claims against it

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Ritz-Craft's Motion to Dismiss,

Doc. 6.)  On March 18, 2008, the Court issued an Opinion and Order granting, in part, Ritz-Craft's

Motion to Dismiss.  (March 18 Opinion & Order, Doc. 22.)  Specifically, the Court first found that

the claims arising under the Builder Agreement are governed by Pennsylvania law based on the

choice of law provision in that contract.  Next, the Court dismissed the following claims:

| | |
|---|---|
| Count I: | the Greens' Breach of Contract claim; |
| Count II: | Flex Homes' Breach of Implied Warranty of Workmanship claim; |
| Count III: | all Plaintiffs' Breach of Implied Warranties of Merchantability and Fitness claims; |
| Count IV: | Flex Homes' Negligence claim; and |
| Count VI: | any OCSPA claims that may have been asserted by Flex Homes. |

(*Id*. at 23.)  In addition, the Court dismissed Flex Homes' claims for lost or cancelled sales and

found that the Complaint failed to adequately plead facts in support of an entitlement to punitive

damages.  Although the Court permitted the Plaintiffs to file an amended complaint including facts

sufficient to support a claim for punitive damages, they did not do so within the time allotted.

### 2.      Ritz-Craft's Motion for Summary Judgment

Next, Ritz-Craft filed a motion for summary judgment with respect to many of the remaining

claims.  (Ritz-Craft's MSJ, Doc. 51.)  In an Opinion & Order dated September 30, 2009 (September

---

[2]  Paragraph 10 of the Complaint lists over a dozen examples of alleged defects relating
to the design, delivery, and installation of the Model Home.  (Doc. 1-1.)

30 Opinion & Order, Doc. 59), the Court granted summary judgment in favor of Ritz-Craft with

respect to the following claims:

| | | |
|---|---|---|
| Count I: | Breach of Contract, as alleged by Flex Homes; | |
| Count V: | Products Liability, as alleged by Flex Homes; | |
| Count V: | Products Liability, to the extent alleged for recovery of damages for emotional distress. | |
| Count VI: | Ohio Consumer Sales Practices Act, as alleged by the Greens; | |
| Count IV: | Negligence, certain aspects of the Greens' claims. | |

(*Id*. at 41.)

These two Opinion & Orders drastically reduced the number of claims pending against Ritz-

Craft.  Indeed, as it stands after the September 30 Opinion & Order, the Plaintiffs only remaining

claims against Ritz-Craft are:

| | | |
|---|---|---|
| Count II: | Breach of the Implied Warranty of Workmanship, asserted by the Greens; | |
| Count IV: | Negligence, certain aspects of the Greens' claims; | |
| Count V: | Products Liability, as alleged by the Greens for damages other than emotional distress. | |

(*Id*.)

### 3.    Citadel's Role

While neither Opinion & Order resolved any of the claims against Citadel, the September

30 Opinion & Order did address Citadel's role in this lawsuit.  As of the September 30 Opinion &

Order, the Plaintiffs had not served Citadel with the Complaint (Doc. 1-1) and Ritz-Craft had not

served Citadel with their Cross-Claim for indemnification (Doc. 45).  Accordingly, the Court

ordered the Plaintiffs and Ritz-Craft to show cause why their claims against Citadel should not be

4

dismissed for failure to prosecute.[3]  (Doc. 59 at 41.)  Both the Plaintiffs and Ritz-Craft filed responses to the Court's show cause order explaining their efforts to serve Citadel, which is no longer in business.  (Docs. 60 and 69.)  In December 2009 and January 2010, service was accomplished.  (*See* Docs. 70, 71, 74, and 83.) On February 1, 2010 Citadel filed an answer to Ritz-Craft's Cross-Claim.  (Doc. 84.)  On February 16, 2010 Citadel filed the motion to dismiss the Plaintiffs' claims that is now ripe and pending before the Court.  (Doc. 86.)

### C.    THE SET CREW AGREEMENT

As noted above, Citadel entered into the Set Crew Agreement with Ritz-Craft on October 27, 2004.  Pursuant to this contract with Ritz-Craft, Citadel "set" the pre-fabricated home on the foundation constructed by Flex Homes and assembled the component parts of the home based on the design and instructions provided by Ritz-Craft.  The Greens hired other sub-contractors in the various trades, such as B&L, to finalize the installation process.

The Set Crew Agreement between Citadel and Ritz-Craft recites that "the parties desire to establish a business relationship whereby [Citadel] performs modular and/or mobile home installation processes, subject to the terms and conditions of this AGREEMENT."  (Doc. 86-6 at 1.) It further provides that Citadel is an independent contractor, as opposed to an agent or employee of Ritz-Craft; that Citadel will indemnify Ritz-Craft for "violations of this AGREEMENT that generate claims by third-parties, including any conduct by [Citadel] in connection with installation of the products"; and that the law of Pennsylvania governs the contract.  (*Id*. at 4.)

---

[3]  The Court also ordered Ritz-Craft to show cause why its claims against Third-Party Defendant B&L Electric, Co. ("B&L") should not be dismissed for failure to prosecute.  (Doc. 59 at 41.)  B&L has now been served, has answered (Doc. 79), and has filed a counterclaim (Doc. 80).

## II.  <u>LAW AND ANALYSIS</u>

Citadel's motion to dismiss is procedurally awkward because it was filed so late in the case -- after the parties had already presented the Court with substantial evidence regarding the relevant facts and circumstances in connection with Ritz-Craft's motion for summary judgment.  Under these circumstances, the Court may take judicial notice of the record and prior proceedings in this case without converting the Rule 12(b)(6) motion to a Rule 56 motion.  *See Cavaliers Operating Co., LLC v. Ticketmaster*, Case No. 07cv2317, 2008 WL 4449466, at *8 (N.D. Ohio Sept. 30, 2008).  Nonetheless, the standard of review for a Rule 12(b)(6) motion remains the same.

### A.  LEGAL STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS

The Court may dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure12(b)(6).  The purpose of a motion under 12(b)(6) is to test the sufficiency of the complaint – not to decide the merits of the case.

It is well-established that a complaint need not set forth in detail all of the particularities of the plaintiff's claim.  *See Myers v. Delaware Co.*, Case No. 2:07-cv-844, 2009 U.S. Dist. LEXIS 98143, *6 (S.D. Ohio Oct. 22, 2009).  Instead, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 does not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations.  *Id*.  The Supreme Court has indicated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 1949; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)("[A] formulaic recitation of the elements of a cause of action"

is insufficient).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is <u>plausible</u> on its face." *Twombly*, 550 U.S. at 570 (emphasis added).  The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  The plausibility requirement is not the same as a "probability requirement" but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Therefore, where a complaint pleads facts that are "merely consistent with" the defendant's liability, "its stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citing *Twombly*, 550 U.S. at 557).  Examining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.

A district court considering a motion to dismiss must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true.  *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *see also Iqbal*, 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. *Iqbal*, 129 S.Ct. at 1950.  In sum, the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that

7

are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Whittiker v. Deutsche Bank National Trust Co.*, 605 F.Supp.2d 914, 924-25 (N.D. Ohio 2009); *Ruth v. Unifund CCR Partners,* No. 5:08CV2689, 2009 U.S. Dist. LEXIS 17362, *11 (N.D. Ohio Mar. 6, 2009) ("In determining whether to grant a Rule 12(b)(6) motion, the court 'may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.'"); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999); *see also* Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). As noted above, here, the Court may take judicial notice of the prior proceedings and the record in this case.

### B.    DISCUSSION

Citadel's motion to dismiss challenges the viability of each of the Plaintiffs' claims against Citadel. Specifically, Citadel argues that the following five claims should be dismissed:

| | |
|---|---|
| Count I: | Breach of contract; |
| Count II: | Breach of the implied warranty of workmanship; |
| Count III: | Breach of the implied warranties of merchantability and fitness; |
| Count IV: | Negligence; |
| Count VI: | Ohio Consumer Sales Practices Act. |

(Doc. 86-1 at 1-2.)[4]  In addition, Citadel moves the Court to strike the request for punitive damages from the Complaint. (*Id*. at 3.)  The Court will address whether dismissal of each claim is

---

[4]  Citadel has also moved for dismissal of Count V, Products Liability, to the extent that the Complaint includes such a claim.  (Doc. 86-1 at 1.)  The Plaintiffs confirmed in their response brief that the Complaint does not include such a claim.  Accordingly, this issue has been resolved and the Court need not address it.

8

appropriate pursuant to the Rule 12(b)(6) standard, as well as the punitive damages issue.

### 1.    Count One:  Breach of Contract

Count I of the Plaintiffs' Complaint alleges that Citadel breached a contract with the Plaintiffs.

### a.    Arguments

Citadel argues that it does not have a contract with either Flex Homes or the Greens.  The parties to the Set Crew Agreement are Citadel and Ritz-Craft.  Further, Citadel contends that the Plaintiffs are not third-party beneficiaries of the Set Crew Agreement under applicable law.

The Plaintiffs response is two-fold.  First, they concede that they are not a party to a written contract with the Plaintiffs, but contend that the allegations in the Complaint are sufficient to state a claim for breach of an oral contract.  Second, they argue that they are third-party beneficiaries to the Set Crew Agreement.

In reply, Citadel argues that the allegations in the Complaint are clearly insufficient to satisfy the pleading standard for breach of an oral contract.  Citadel also reiterates its argument that the Plaintiffs are not third-party beneficiaries to the Set Crew Agreement.

### b.    Analysis

### i.    Pennsylvania Law Governs

As a threshold issue, the Court must determine the law applicable to analyzing the viability of the Plaintiffs' breach of contract claim against Citadel, and the other claims premised upon the Set Crew Agreement.

The Set Crew Agreement includes a "Governing Law" provision that states:

> This AGREEMENT shall be governed by, construed, and enforced in accordance with, the laws of Pennsylvania without regard to its principles of conflict of law.

9

(Doc. 86-6 at 4.)  Nonetheless, Citadel asserts in a footnote that the Court should apply Ohio law to determine whether the Plaintiffs are third-party beneficiaries of the Set Crew Agreement.  (Doc. 86-1 at n.1.)  Citadel does not cite any authority or provide any explanation for this position.  The Plaintiffs do not address the issue in their response.  (Doc. 93 at 5.)

In the March 18 Opinion & Order, the Court analyzed an identical choice of law provision in the Builder Agreement between Flex Homes and Ritz-Craft and concluded that Pennsylvania law applied to the determination of whether the Greens were third-party beneficiaries to that contract.  (Doc. 22 at 5-6.)  For the reasons articulated in that order, the Court will analyze the third-party beneficiary question with respect to the Set Crew Agreement under Pennsylvania law.  *See also Davidson & Jones Dev. Co. v. Elmore Dev. Co., Inc.*, 921 F.2d 1343, 1356 n.15 (6th Cir. 1991) (applying the law of the state specified in the contract that the putative third-party beneficiaries sought to invoke to the question of whether they were third-party beneficiaries); *cf. Clintonville Service Center v. Monaco Coach Corp.*, Case No. 2:06cv295, 2007 WL 1024809, at *4 (S.D. Ohio Mar. 30, 2007) (refusing to use choice of law provision in a contract to resolve conflict of law question because defendant was neither a party nor a third party beneficiary to the contract); *Hay Acquisition Co., I., Inc. v. Schneider*, Case No. 2:04cv1236, 2005 WL 1017804, at *8 (E.D. Pa. Apr. 27, 2005).

### ii.      Failure to State a Claim for Breach of an Oral Contract

The Court rejects the Plaintiffs' contention that the Complaint states a claim for breach of an oral contract.  The Complaint repeatedly references the Builder Agreement between Flex Homes and Ritz-Craft – in fact, it is attached to the Complaint.  It does not, however, mention the Set Crew Agreement, and that contract is not attached to the Complaint.  In addition, it does not mention,

10

suggest, or imply the existence of an oral agreement of any kind between any of the parties. Accordingly, the Plaintiffs' argument is reduced to the contention that asserting a generic breach of contract claim is sufficient to survive a motion to dismiss without any factual allegations relating to the particular contract at issue because, under the Rule 12(b)(6) pleading standard, "the allegation of a contract between Plaintiffs and Citadel must be accepted as true."  (Doc. 93 at 4.)  This is a patent misinterpretation of the Rule 12(b)(6) standard, particularly in the aftermath of the *Twombly* and *Iqbal* decisions discussed above.  While the Court must construe the Complaint in the light most favorable to the Plaintiffs, the claim must be supported by factual allegations such that it is "plausible on its face." *Twombly*, 550 U.S. at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  Here, such an inference would be unreasonable because the Complaint does not include <u>any</u> factual allegations regarding an oral agreement.  Accordingly, the Court holds that the Plaintiffs have not stated a claim that Citadel breached an oral contract with the Plaintiffs.[5]

### iii.   The Plaintiffs Are Not Third-Party Beneficiaries of the Set Crew Agreement

Citadel argues that the Plaintiffs are not third-party beneficiaries of the Set Crew Agreement under Ohio law because they are neither mentioned in the contract nor are they the direct and primary beneficiaries of the contract.  (Doc. 86-1 at 4-5.)  It also notes, however, that the result would be the same under Pennsylvania law because the tests for third-party beneficiary status are virtually identical.

---

[5] This is true with respect to both Plaintiffs – i.e., Flex Homes and the Greens.

The Plaintiffs contend that determining whether they are third-party beneficiaries is a factual question inappropriate for Rule 12(b)(6) review.  (Doc. 93 at 5.)  In addition, the Plaintiffs make the following argument:

> If Citadel is not bound by any contract, written or oral, between Plaintiffs and Citadel **and** Plaintiffs are not intended third party beneficiaries between any contract, written or oral, between Citadel and Ritz Craft Defendants, then Citadel apparently assembled Plaintiffs' subject manufactured home on a completely gratuitous basis for some unknown party, pursuant to no terms or conditions at all.  Based upon past pleadings the Ritz Craft Defendants would have this Court believe that all problems, including design problems, with the manufactured home were the fault of Citadel and Citadel would have this Court believe that it had no obligation to either Plaintiffs in general or Ritz Craft in particular with regard to the manufactured home now in question.  Quite obviously, these parties have attempted to construct a contractual maze which insulates all concerned from liability.

(Doc. 93 at 5 (emphasis in original).)

First, whether a party is a third-party beneficiary is a question of law for the Court.  *See Shumate v. Twin Tier Hospitality, LLC*, 655 F. Supp. 2d 521, 535 (M.D. Pa. 2009).  Specifically, whether recognition of a third-party's right to sue for breach of contract "is appropriate to effectuate the intention of the parties" is a legal question.  *Id*. (quoting *Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.*, 39 F.Supp.2d 517, 535 (M.D.Pa.1999) (citing *Scarpitti v. Weborg*, 530 Pa. 366, 609 A.2d 147, 150 (1992)) (quoting *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744, 751 (1983)).

Second, as the Court discussed in the March 18 Opinion & Order, Pennsylvania law does not readily confer third-party beneficiary status.  (Doc. 22 at 8-12.)  Under the common law test, both Ritz-Craft and Citadel would have had to express an intention to benefit the Plaintiffs in the Set Crew Agreement itself.  *See Spires v. Hanover Fire Ins. Co.*, 70 A.2d 828, 830-31 (Pa. 1950); *Manor Junior Coll. v. Kaller's Inc.*, 507 A.2d 1245, 1246 (Pa. Super. 1986).  The Plaintiffs cannot

12

satisfy this test because they do not even allege that the Set Crew Agreement specifically mentions or references them.

The Pennsylvania Supreme Court has also recognized that, in a narrow ranges of circumstances, the third-party beneficiary test articulated in the Restatement (Second) of Contracts § 302 (1979) is an appropriate alternative to the *Spires* test.  *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983).  In *Liederbach*, the Pennsylvania Supreme Court articulated the Restatement test as the following two-pronged inquiry:

> (1) the recognition of the beneficiary's right must be 'appropriate to effectuate the intention of the parties,' and (2) the performance must 'satisfy an obligation of the promisee to pay money to the beneficiary' or 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Liederbach*, 459 A.2d at 751.  As the Court explained in some detail in the March 18 Opinion & Order, however, the Restatement test is still a high hurdle for a party seeking third-party beneficiary status.  (Doc. 22 at 8-12.)  For example, the Pennsylvania Supreme Court has held that even a daughter who sought third-party beneficiary status to enforce child support provisions with respect to her parents' divorce settlement agreement was not a third-party beneficiary under *Liederbach*. *Chen v. Chen*, 893 A.2d 87 (Pa. 2006).  Although the agreement in *Chen* specifically provided for child support payments, the Court held that the child support provision was intended to ensure that the parent with custody would receive child support payments, not to confer a specific benefit on the daughter herself.  *Id*. at 92.  Here, the Set Crew Agreement is a contract between Ritz-Craft and Citadel whereby Ritz-Craft pays Citadel to set the premanufactured home on its foundation and to assemble all of the other Ritz-Craft components on-site.  While the ultimate owner of the home set by Citadel benefits from Citadel's performance of the contract, neither party specifically intends to confer a benefit on a specific person or persons.  Ritz-Craft and Citadel's intentions are in no way

dependent upon the Plaintiffs' rights as the ultimate purchasers of the Model Home.  Accordingly, the Plaintiffs do not have standing to assert a breach of contract claim under a third-party beneficiary theory.

The Plaintiffs' second argument, i.e., that it would be unfair <u>not</u> to recognize the Plaintiffs' contractual rights under the Set Crew Agreement because the Defendants have "have attempted to construct a contractual maze which insulates all concerned from liability" (Doc. 93 at 5), fails based on the same logic.[6]  Simply put, Citadel is not insulated from liability.  Citadel constructed the Model Home pursuant to its contact with Ritz-Craft, it did not do so "on a completely gratuitous basis for some unknown party, pursuant to no terms or conditions at all" as the Plaintiffs illogically contend. Citadel is liable to Ritz-Craft for breach of contract to the extent that its performance did not comply with the terms of the Set Crew Agreement.  For example, one of those terms is the clause that requires Citadel to indemnify Ritz-Craft for any violations of the Set Crew Agreement "that generate claims by third parties, including any conduct by [Citadel] in connection with installation of the products." (Doc. 86-6 at 4.)

Consequently, the Plaintiffs' breach of contract claims against Citadel are hereby

---

[6]  If anything, the "contractual maze" – i.e., the oddities in this case relating to contractual liability -- resulted from the Greens' calculated decision to intermingle their personal interests and funds with Flex Homes' business pursuits.  The Greens admitted that they decided to use their own funds to buy the Model Home for Flex Homes' business purposes in order to obtain more favorable loan terms for Flex Homes.  (*See* Doc. 59 at 4-5.)  The "contractual maze" certainly includes the purchase agreement between the Greens and Flex Homes for the Greens to buy the Model Home from Flex Homes with the intention of using it to promote Flex Homes business. (*Id*.)  While the propriety of this arrangement is not before the Court, both the Greens and Flex Homes must live with its legal consequences, including the fact that it essentially caused the Greens' breach of contract claim against Ritz-Craft to be dismissed (Doc. 22 at 6-13), and summary judgment in favor of Ritz-Craft to be granted on Flex Homes' breach of contract claim (Doc. 59 at 16-18).

**DISMISSED**.

> **2.  Count Three: Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose**

The Court must analyze the Plaintiffs' implied warranty of merchantability and fitness for a particular purpose claims in light of the conclusion that the Plaintiffs are neither parties to a contract with Citadel nor third-party beneficiaries to the Set Crew Agreement.  As the Court explained in the March 18 Opinion & Order, the choice of law provision in the Set Crew Agreement does not apply to the Plaintiffs because they are neither parties nor third-party beneficiaries of that contract.  Further, under Ohio law, privity of contract is generally a prerequisite to a breach of the implied warranties of merchantability and fitness for a particular purpose.  *See Curl v. Volkswagon of Am., Inc.*, 871 N.E.2d 1141, 1147-48 (Ohio 2007); *Lawyers Coop. Publ'g Co. v. Muething*, 603 N.E.2d 969, 972 (Ohio 1992) ("[A]bsent a contractual relationship between the plaintiff and defendant, an action based on contract for breach of warranty does not exist.").  (*See generally* Doc. 22 at 15.)

The Plaintiffs contend that "the same 'remote manufacturer' argument that this Court applied to the Ritz-Craft Defendants should [not] apply to [Citadel]."  (Doc. 93 at 6.)  They assert that the differences between Ritz-Craft and Citadel's role are dispositive of this issue and that there are no disclaimer of warranty provisions in their "contractual relationship" with Citadel.  (*Id.*)  This argument fails at the outset because the relationship between Citadel and the Plaintiffs is <u>not</u> contractual.  The same false comparison undermines the Plaintiffs disclaimer of warranties distinction.  There are no warranties to disclaim as between the Plaintiffs and Citadel because, unlike Ritz-Craft and Flex Homes, the Plaintiffs and Citadel do not have a contractual relationship of any kind.

15

Accordingly, the Plaintiffs' claims for breach of implied warranty of merchantability and fitness for a particular purpose are **DISMISSED**.

### 3.    The Plaintiffs' Implied Warranty of Workmanship and Negligence Claims

Citadel's arguments in support of dismissal of the Plaintiffs' implied warranty of workmanship and negligence claims are premised on the Court finding that the Plaintiffs are third-party beneficiaries to the Set Crew Agreement.  (Doc. 86-1 at 8.)[7]  For the reasons discussed above, the Court has concluded that the Plaintiffs are <u>not</u> third-party beneficiaries to the Set Crew Agreement.  Consequently, Citadel's arguments on this point are moot and their motion to dismiss does not seek dismissal of the Plaintiffs' implied warranty of workmanship and negligence claims against Citadel.

### 4.    The Greens' OCSPA Claims

It is undisputed that only the Greens, not Flex Homes, are asserting an OCSPA claim.  (*See* Doc. 93 at 6.)

### a.    Arguments

Citadel argues that the Greens' claim against it under the Ohio Consumer Sales Practices Act ("OCSPA") should be dismissed because the Complaint does not allege that the Greens and Citadel

---

[7]  Citadel's motion to dismiss states:

Citadel maintains that Plaintiffs are not third-party beneficiaries to the Set Crew Agreement (or any other contract) in place between Citadel and Ritz-Craft. However, should the court disagree and rule that Plaintiffs are indeed third-party beneficiaries to a contract, then the Court must automatically dismiss Plaintiffs' breach of implied warranty of workmanship (Count 2), negligence (Count 4), and product liability (Count 5) claims against Citadel.

(Doc. 86-1 at 8.)

16

engaged in a "consumer transaction" as defined by the statute.  (Doc. 86-1 at 7; Doc. 95 at 3.)[8]

The Greens argue that Citadel violated the OCSPA because transfer of a service is within the statutory definition of a "consumer transaction." They believe Citadel provided a service to the Greens pursuant to a contract when it assembled the components of the Model Home.  (Doc. 93 at 7.)  The Greens point to paragraph 18 of the Complaint, which states:

> The pre-manufactured house components manufactured and sold by Ritz-Craft, and installed by Citadel and the John Doe defendants pursuant to the Contract [i.e., the Builder Agreement between Ritz-Craft and Flex Homes] include defects and, as such, were not of merchantable quality, nor fit and safe for their ordinary and intended use, which was known to Defendants.

(Doc. 1 at 5.)  They contend that it would be inappropriate for the Court to determine whether the Greens and Citadel engaged in a "consumer transaction" in the context of a Rule 12(b)(6) analysis. (*Id*.)

### b.    Analysis

The Greens' contention that it is inappropriate to determine whether a transaction is a "consumer transaction" in the context of a Rule 12(b)(6) motion is reasonable.  As the Court explained in the September 30 Opinion & Order, Ohio courts use a totality of the circumstances test to analyze whether a transaction is a "consumer transaction" for purposes of the OCSPA.  (Doc. 59 at 22-23.)

---

[8]    In the alternative, Citadel contends that the Greens' OCSPA claim should be dismissed because the Court has already ruled that the Greens bought the Model Home for business purposes.  (*Id*. at 8 n.2.)  In response, the Greens argue that the Court never "ruled" that the Greens purchased the Model home for a business purpose "though it may have simply stated such in an Opinion."  (*Id*.)  They contend that it would be inappropriate for the Court to determine whether the Greens purchased the home for business or personal purposes in the context of a Rule 12(b)(6) analysis.  (*Id*.) Although the Greens' argument on the latter point seems correct, for the reasons discussed below, Citadel's first argument with respect to this claim is well-taken and, therefore, the Court need not address Citadel's alternative argument.

Citadel's argument, however, is that the Complaint does not allege that a "transaction" of any kind occurred between Citadel and the Greens:

> In no way does the Complaint allege that Citadel sold, leased, assigned, or awarded its services to Plaintiffs. Citadel performed its services pursuant to its contract with Ritz-Craft and had no actual relationship with Plaintiffs.  Therefore, no "consumer transaction" took place between Citadel and the Greens.

(Doc. 95 at 3.)  The Complaint specifically alleges that "[t]he Greens purchase of the [Model Home] is a "Consumer Transaction" as defined by R.C. 1345.01(A)."  (Doc. 1 at 6.)  It also alleges that "Defendants are a 'Supplier' and a 'Person' as defined by R.C. 1345.01."  (*Id*.)  "Defendants" includes Citadel.  Thus, the Plaintiffs' Complaint recites the essential elements of a OCSPA claim against Citadel.

The next question is whether the Plaintiffs have alleged sufficient facts in support of their OCSPA claim against Citadel to satisfy the *Twombly*/*Iqbal* plausibility standard.  *See Iqbal*, 129 S.Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.");  *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action" is insufficient).  As explained above in the discussion of the Plaintiffs' contract claims, the Complaint does <u>not</u> allege a contractual relationship between the Plaintiffs and Citadel.  Indeed, the only contract referenced in the Complaint itself is the Builder Agreement between Ritz-Craft and Flex Homes.  The only allusion to a commercial relationship of any kind between the Plaintiffs and Citadel is the following paragraph of the Complaint:

> Flex [Homes] subsequently sold one of the houses [i.e., the Model Home] purchased in the Contract [i.e., the Builder Agreement] to the Greens while Ritz-Craft, Citadel and the John Doe defendants herein were still performing services under the Contract and the Greens became third-party beneficiaries of the above-described contract between Flex and the Defendants.

(Doc. 1 at 3.)  In other words, the Plaintiffs allege that Citadel performed a service <u>for Flex Homes</u>

18

under the Builder Agreement between Ritz-Craft and Flex Homes and performed a service <u>for the Greens</u> as third-party beneficiaries to that same contract. The Builder Agreement is attached to the Complaint as an exhibit,[9] and it does not indicate that the set crew – in this instance, Citadel – performs services for the ultimate purchaser of a Ritz-Craft pre-manufactured home. Review of the Set Crew Agreement, however, indicates that it is a contract between Ritz-Craft and Citadel such that Citadel's performance provides a service to Ritz-Craft, not the Greens. Like the analysis of the third-party beneficiary issue, the terms of the Set Crew Agreement confirm a simple payment-for-service relationship between Ritz-Craft and Citadel. Accordingly, the Complaint does not contain facts sufficient to support the existence of a "transaction" between the Greens and Citadel that could be characterized as a "consumer transaction" for purposes of the OSCPA. Therefore, the Greens' OCSPA claim against Citadel fails as a matter of law and is **DISMISSED**.

### 5. Punitive Damages

Finally, the Court must address Citadel's request to strike the allegations regarding punitive damages from the Complaint. (*See* Doc. 86-1 at 3.)

Citadel argues that, despite the fact that the Court expressly provided the Plaintiffs with an opportunity to augment their allegations relating to punitive damages, they failed to do so and the Complaint does not allege facts in support of the actual malice element of punitive damages under Ohio law. (*Id*.) Citadel correctly notes that the Court's March 18 Opinion & Order instructed the Plaintiffs to amend the Complaint to assert a basis for punitive damages or their request for such

---

[9] The Builder Agreement refers to the Set Crew Agreement as an attachment, but a copy of the Set Crew Agreement was not attached to the Complaint. (*See* Doc. 1-1.) Ritz-Craft submitted the Set Crew Agreement to the Court as an exhibit to their cross-claim against Citadel. (Doc. 37.) It has subsequently been submitted as an exhibit to other filings, including the motion to dismiss that is now before the Court. (Doc. 86-6.)

19

damages would be stricken from the Complaint.[10]  In addition, in their reply brief, Citadel notes that

Rule 12(f) of the Federal Rules of Civil Procedure specifically provides for a motion to strike a

portion of a pleading.  (Doc. 95 at 1.)

The Plaintiffs argue that their request for punitive damages may not be stricken at the Rule

12(b)(6) stage of the proceedings.  (Doc. 93 at 2.)  Without citation to authority, the Plaintiffs assert

that including a request for punitive damages in the prayer for relief is "all that is required by law."

_____

[10]    Specifically, the Court stated:

Under Ohio law, the plaintiff must allege in the complaint facts sufficient to raise
an inference of actual malice in order present a claim for punitive damages.  *See
Lum v. Mercedes Benz USA, L.L.C.*, No. 3:05cv7191, 2006 WL 1174228, *2
(N.D. Ohio Apr. 18 2006).  When the plaintiff includes a request for punitive
damages in the complaint, but fails to allege sufficient facts to support an
inference of actual malice, the plaintiff must, at a minimum, amend the complaint
to add sufficient facts.  *Id*.  This assumes, of course, that such an amendment can
be made in good faith.

Here, the Plaintiffs' have not alleged facts sufficient to support an inference of
actual malice.  In fact, the Complaint does not contain any allegations regarding
Ritz-Craft's mental state, with the exception of references to "deception" and
"misrepresentation" in connection with the CSPA claim (for which the Greens are
*not* seeking, and can not seek, punitive damages).  Accordingly, in order to state
viable claims for punitive damages under their negligence and products liability
causes of action, the Plaintiffs must **<u>AMEND</u>** their complaint to include facts
sufficient to support an inference of actual malice, if such facts appropriately can
be alleged.

(Doc. 22 at 22-23.)

20

(*Id.* at 3.)[11]

The Court rejected the Plaintiffs' argument on this issue in the March 18 Opinion & Order and does so again here.  For the reasons discussed more fully in the March 18 Opinion & Order, the Plaintiffs failed to allege facts supporting a request for punitive damages.  Under applicable Ohio law, it is not sufficient to simply request punitive damages in the prayer for relief.  *See Lum v. Mercedes Benz USA, L.L.C.*, No. 3:05cv7191, 2006 WL 1174228, *2 (N.D. Ohio Apr. 18 2006).  Although the Court allowed the Plaintiffs to amend their complaint to assert the factual basis of a proper claim for punitive damages, they did not avail themselves of that opportunity.  Accordingly, the Plaintiffs' request for punitive damages is hereby **STRICKEN** from the Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

---

[11]  The Plaintiffs defend their request for punitive damages by contending that Citadel's "only support for this argument is this Court's previous ruling, which is based upon the cases cited by the moving Ritz-Craft Defendants."  (Doc. 93 at 3.)  They go on to cite several cases and argue that none of them supports striking a request for punitive damages pursuant to Rule 12(b)(6).  (*Id.*) Curiously, however, the Court did not cite any of these cases in its March 18 Opinion & Order and the Plaintiffs have not addressed any of the cases the Court <u>did</u> cite, e.g., *Lum v. Mercedes Benz USA, L.L.C.*, No. 3:05cv7191, 2006 WL 1174228, *2 (N.D. Ohio Apr. 18 2006).

III.    **CONCLUSION**

Defendant Citadel Builders, Inc.'s Motion To Dismiss Plaintiffs' Complaint (Doc. 86) is **GRANTED in part and DENIED in part**.  The Motion to Dismiss is **GRANTED** with respect to the following claims asserted by both Plaintiffs in the Complaint (Doc. 1-1), and these claims are hereby **DISMISSED**:

| | |
|---|---|
| Count I: | Breach of Contract; |
| Count III: | Breach of Implied Warranties of Merchantability and Fitness; |
| Count VI: | Ohio Consumer Sales Practices Act. |

Additionally, the Plaintiffs' claims for punitive damages against all Defendants are **STRICKEN** pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  The Motion to Dismiss is **DENIED as moot** with respect to the Plaintiffs' claims for Breach of the Implied Warranty of Workmanship (Count II) and Negligence (Count IV).

Finally, all claims against the "John Doe Subcontractors" are hereby **DISMISSED** for failure to prosecute.

As a result of this Opinion & Order, as well as the Court's March 18 Opinion & Order (Doc. 22) and September 30 Opinion & Order (Doc. 59), **the following claims remain pending in this lawsuit**, as between the respective parties identified below:

### *Flex Homes v. Ritz-Craft* (*See* **Doc. 1-1**)

• None:  all of Flex Homes' claims against Ritz-Craft have been dismissed.  (*See* Doc. 59.)

### *The Greens v. Ritz-Craft* (*See* **Doc. 1-1**)

| | | |
|---|---|---|
| • | Count II: | Breach of the Implied Warranty of Workmanship; |
| • | Count IV: | Negligence (as and to the extent described in Doc. 59); |
| • | Count V: | Products Liability (for damages other than emotional distress (*see* Doc. 59)). |

### *Flex Homes and the Greens v. Citadel* (*See* **Doc. 1-1**)

- Count II:      Breach of the Implied Warranty of Workmanship;
- Count IV:     Negligence.

### *Counterclaim: Ritz-Craft v. Flex Homes* (*See* **Doc. 45**)

- Indemnification.

### *Cross-Claim: Ritz-Craft v. Citadel* (*See* **Doc. 45**)

- Indemnification.

### *Third-Party Complaint: Ritz-Craft v. B&L Electric Co.* (*See* **Doc. 42**)

- Indemnification.

### *Counterclaim: B&L Electric Co. v. Ritz-Craft* (*See* **Doc. 80**)

- Indemnification.

This case is scheduled for mediation before Magistrate Judge David S. Perelman, on a date to be determined in July 2010.  (Doc. 96.)  Regardless of the date of the mediation, and without extending any deadlines currently in place, all discovery – both fact discovery and expert discovery – must be complete by **August 1, 2010**.  Further, the case is scheduled for trial in September 2010. **No extensions of this trial date will be granted**.  A Trial Order setting forth pre-trial deadlines and obligations has issued.

**IT IS SO ORDERED.**

                                                          s/Kathleen M. O'Malley
                                                          KATHLEEN McDONALD O'MALLEY
                                                          UNITED STATES DISTRICT JUDGE

**Dated: June 18, 2010**

23